PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VOLVO TRUCKS OF NORTH AMERICA,
INCORPORATED, formerly known as
Volvo GM Heavy Truck
Corporation,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

No. 03-1256

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CA-01-416-3)

Argued: February 24, 2004

Decided: May 5, 2004

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

## COUNSEL

**ARGUED:** Tamura D. Coffey, WILSON & ISEMAN, Winston-Salem, North Carolina, for Appellant. Randolph L. Hutter, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** G. Gray Wilson, J. Chad Bomar,

WILSON & ISEMAN, Winston-Salem, North Carolina, for Appellant. Eileen J. O'Connor, Assistant Attorney General, Richard Farber, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Volvo Trucks of North America, Inc. commenced this action against the Internal Revenue Service ("IRS") to obtain an $856,226 refund of federal excise taxes paid under 26 U.S.C. § 4051(a) for heavy trucks that Volvo sold to its dealers during the 1989-91 period. Volvo claimed to be entitled to an exemption from the tax, but the IRS disallowed the exemption because Volvo failed to support its claim with the documentation required by Temporary Treasury Regulation § 145.4052-1 (1988).

Volvo contends (1) that Regulation § 145.4052-1 was an arbitrary and capricious regulation as promulgated and as applied; (2) that Volvo substantially complied with the regulation's requirements; and (3) that Volvo's noncompliance with the regulation was attributable to representations made by IRS agents and therefore that the IRS should be equitably estopped from disputing Volvo's refund request.

The district court dismissed Volvo's equitable estoppel claim under Federal Rule of Civil Procedure 12(b)(6), and it granted the IRS's motion for summary judgment on the other two claims. For the reasons that follow, we affirm.

I

Before 1983, the Internal Revenue Code imposed an excise tax on the first sale by a manufacturer or importer of heavy-duty trucks, but in 1983, Congress changed the law to impose the 12% tax on the value of the "first retail sale" of such trucks. 26 U.S.C. §§ 4051, 4052 (1983). Congress defined the "first retail sale" as "the first sale . . . for a purpose other than for resale or leasing in a long-term lease." *Id.*

§ 4052(a)(1). Under this scheme, manufacturers and importers would be exempt from excise tax on trucks sold to their dealers for resale, and their dealers would pay the tax. For trucks that the dealers purchased for their own use, however, the manufacturer or the importer would have to pay the tax. Temporary Treasury Regulation § 145.4052-1 was promulgated in 1988 to provide the mechanism by which the IRS collected this tax.

Section 4052 authorized the IRS to promulgate regulations, directing the IRS to prescribe rules "similar to the rules of . . . section 4222." 26 U.S.C. § 4052(d) (later amended by Pub. L. No. 105.34, § 1434(b)(1) (1997)). Under § 4222, which governs a different set of tax exemptions, taxpayers are required to register with the IRS before they can be eligible for the exemptions. *Id.* § 4222(a). In addition to the registration requirement, parties to sales governed by § 4222 must, as required by regulations promulgated under § 4222, also provide the IRS with a written statement establishing the nontaxable nature of each sale. 26 C.F.R. §§ 48.4222(a)(1)(c), 48.4221-1(c). Acting on § 4052's instruction to use § 4222 as a guide in establishing regulations for § 4052, the IRS promulgated Temporary Treasury Regulation 26 C.F.R. § 145.4052-1 (1988).

Regulation § 145.4052-1(a) provided that in order for a manufacturer-seller to be exempt from the excise tax imposed under § 4051, both the manufacturer-seller and the dealer-purchaser had to be registered with the IRS. In addition, the manufacturer-seller must have obtained from the dealer-purchaser a signed certificate that included the dealer's registration number and indicated that the transaction was for resale or long-term lease.

Volvo Trucks of North America, Inc. ("Volvo"), a manufacturer of heavy trucks and truck parts, responded to this regulation by instructing each of its franchised dealers to register with the IRS and to provide Volvo with exemption certificates that indicated the dealer's registration number and that listed the trucks purchased for resale. Two such dealers, Atlas Engine Rebuilders, Inc. ("Atlas") and Alaska Sales and Service, Inc. ("Alaska"), sent Volvo certificates with the phrase "Applied For" in the field reserved for its IRS registration number, indicating that they had applied for but not yet received a registration number for the relevant period. Another dealer, Alameda

Truck Center, Inc. ("Alameda"), never supplied Volvo with a certificate. There is evidence that despite their failure to produce the certificates to Volvo, Alaska and Alameda had in fact registered with the IRS.

In 1991, the IRS began two excise tax audits of Volvo, one covering the period 1989-90 and the second covering 1990-91. At the end of the audits, the IRS assessed Volvo with over $2.1 million in excise taxes and penalties to cover those sales transactions that it had with dealers for which Volvo had not produced completed dealer certifications. Volvo paid the assessed amount and pursued administrative appeals. During this administrative process, the IRS refunded taxes to Volvo for transactions where the IRS could confirm that the dealer had paid the excise tax, even if the dealer had not properly registered and had not properly certified the transaction. As a result of this process, Volvo's liability for excise taxes was reduced from over $2.1 million to $856,226.08. Volvo commenced this action seeking a refund of this remaining amount.

In its complaint, Volvo contends (1) that Temporary Treasury Regulation § 145.4052-1 was invalid because it was an arbitrary and capricious regulation; (2) that Volvo substantially complied with Regulation § 145.4052-1; and (3) that the IRS should in any event be equitably estopped from enforcing the regulation because, during the administrative process, IRS made representations on which Volvo relied in failing to produce the required documentation. With respect to the equitable estoppel claim, Volvo alleged that IRS agents told Volvo that it did not need to have exemption certificates, but the IRS later changed its position; that IRS agents told Volvo that exemption certificates would apply retroactively but then denied their retroactive effect; and that IRS agents told Volvo that the IRS would accept affidavits in lieu of certifications but then refused to accept affidavits.

The district court granted the IRS's motion for summary judgment on Volvo's first two claims relating to Regulation § 145.4052-1 and Volvo's compliance with it, and it granted the IRS's motion to dismiss the third claim relating to equitable estoppel on the ground that Volvo failed to state a claim upon which relief could be granted. This appeal followed.

## II

Volvo contends first that the promulgation of Temporary Treasury Regulation § 145.4052-1 was an invalid exercise of the IRS's rule-making authority. More particularly, Volvo argues that (1) Regulation § 145.4052-1 was inconsistent with 26 U.S.C. § 4052, which authorized the regulation; (2) the regulation was inconsistent with congressional intent; (3) the IRS failed to consider the possibility of double-taxation in promulgating the regulation; and (4) the regulation was not "uniformly or literally applied" in all circumstances. We address these arguments *seriatum*.

On Volvo's first argument that the regulation was inconsistent with the statute, we conclude that the regulation was not only consistent with the plain language of the statute, but it was explicitly contemplated by the statute. In § 4052, Congress authorized the IRS to promulgate regulations "similar to the rules of . . . section 4222." 26 U.S.C. § 4052(d)(2). Section 4222 requires that all parties to a sale be registered with the IRS as a condition to receiving the tax exemptions that are detailed in § 4221. In addition, the regulations promulgated under §§ 4221 and 4222 require that purchasers provide sellers with written statements that include their IRS registration numbers and the nontaxable purpose for which the items were purchased. 26 C.F.R. §§ 48.4222(a)-(1)(c), 48.4221-1(c). Thus, when Congress specifically instructed the IRS in § 4052 to promulgate regulations similar to those in § 4222, it directed the Commissioner to impose registration and certification requirements in connection with sales covered by § 4052.

The Commissioner did just that. When the IRS promulgated Temporary Treasury Regulation § 145.4052-1, it was only complying with the explicit requirements of § 4052. As with § 4221 and its implementing regulations, the IRS required with respect to § 4052 that manufacturer-sellers and dealer-purchasers be registered with the IRS under § 4222 and that the manufacturers obtain exemption certificates containing statements from the dealer-purchasers that the trucks being sold were for resale or long-term leasing. Even if § 4052 had not explicitly authorized such a regulatory scheme, however, Regulation § 145.4052-1 would have been a reasonable promulgation designed to verify that the excise tax had been paid by the dealer before exempt-

ing the manufacturer. It therefore would undoubtedly have been within the IRS's authority.

As for Volvo's argument that the regulation violated congressional intent, there is little need to address this point further because, as already noted, the IRS received explicit authority to promulgate the regulation. Moreover, Congress' intent to authorize such a regulation is manifested by the fact that in later changing the language of § 4052, Congress, albeit a different Congress, recognized that it was adopting a new requirement that called for less documentation than it had required in the 1983 version of § 4052. *See* 26 U.S.C. § 4052(g) (2003) (deleting the registration requirement and authorizing the endorsement of a simple affidavit by the purchasing dealer on the sales invoice that "such sale is for resale"). In recognizing that the registration and certification requirements of the 1983 version of § 4052 were too onerous, Congress also recognized that it would have to rewrite the old version before the Commissioner could discard those onerous requirements. Thus, Congress recognized that, at the time the IRS promulgated Temporary Treasury Regulation § 145.4052-1 (1988), it was the then-current Congress' intent that the IRS issue such a regulation.

Volvo also argues that the regulation was arbitrary and capricious in that it created the possibility of double taxation. This argument, however, is not based on the traditional understanding of double taxation — referring to taxing a single transaction twice — because, in the circumstances before us, there are actually two transactions in play: the sale by the manufacturer to the dealer and the sale by the dealer to the user. Even if both transactions were taxed, the taxation would not amount to double taxation in the traditional sense. Using "double taxation" in a nontraditional sense, as Volvo would prefer for its argument — i.e., to refer to any instance where a taxpayer pays a tax for which it could have been exempt — would render almost any documentation requirement violative of this "double taxation" prohibition. Tax exemptions generally rely on taxpayers' ability to prove their eligibility, and the IRS's actions in demanding such proof are not arbitrary and capricious merely because some taxpayers do not take advantage of all exemptions. Volvo has no legal authority or plausible legal theory to support its argument that the fact that its noncompli-

ance could result in taxation to both Volvo and its dealers renders the IRS's regulation arbitrary or capricious.

Finally, Volvo makes the astonishing argument that in order to avoid arbitrariness and capriciousness, "an administrative agency must uniformly apply its regulations to all applicable situations." Such a standard would be impossible for any agency to achieve. The inherently discretionary nature of enforcement duties means that, in the absence of an unconstitutional motive, the agency cannot be required to apply each of its regulations mechanically to every situation that falls under them.

In sum, we find no merit in any of Volvo's arguments that Temporary Treasury Regulation § 145.4052-1 was invalid.

### III

Volvo next contends that it "made a good faith effort to comply" with Temporary Treasury Regulation § 145.4052-1 and that, under the doctrine of substantial compliance, it is entitled to a refund. Volvo asserts that its substantial compliance with the regulation is a question of fact that cannot be properly resolved by summary judgment and that therefore we must remand this issue to the district court for trial. Even as Volvo recognizes that it failed to obtain proper certifications from three dealers — Atlas, Alaska, and Alameda — it proffers in support of its substantial compliance claim evidence that suggests that Alameda and Alaska were registered with the IRS and that they paid some of the required excise taxes. Volvo also suggests that Alaska's and Alameda's forms demonstrating payment of the excise tax have been destroyed by the IRS. Finally, Volvo has presented evidence that it made good-faith efforts to obtain certifications from its dealers but that the dealers did not provide them. At bottom, it maintains that the establishment of these facts and more would justify a factfinder's determination that Volvo had substantially complied with Regulation § 145.4052-1.

At the outset, it must be noted that in circumstances where the IRS was able to determine from its own records that Volvo's dealers paid the excise tax, the IRS refunded taxes to Volvo. Indeed, in response to such an investigation, the IRS reduced its initial assessment of $2.1

million to $856,226. The IRS presses its claim for excise taxes from Volvo in the circumstances where it has no record that the excise taxes were paid.

Substantial compliance, as applied to tax regulation requirements, must be seen as a limited exception to the general rule that "equitable considerations are of limited consequence" in interpreting tax law because "tax laws are technical and, for the most part, are to be accordingly interpreted." *Hull v. United States*, 146 F.3d 235, 238 (4th Cir. 1998) (internal quotation marks and citations omitted). Even so, the Tax Court has accepted substantial compliance with regulatory requirements when the requirements "are procedural and when the essential statutory purposes have been fulfilled." *American Air Filter Co. v. Commissioner*, 81 T.C. 709 (1983). We have recognized a similar formulation, inquiring whether the failure to comply with a regulatory requirement "goes to the 'essence' of the provision, or whether it is merely a relatively ancillary, minor procedural infirmity." *Atlantic Veneer Corp. v. Commissioner*, 812 F.2d 158, 161 (4th Cir. 1987). Believing that the dichotomy between "essential" and "procedural" for this purpose is not satisfactory, the Seventh Circuit has suggested a formulation that "[t]he common law doctrine of substantial compliance should not be allowed to spread beyond cases in which the taxpayer had a good excuse (though not a legal justification) for failing to comply with either an *unimportant* requirement or one unclearly or *confusingly stated* in the regulations or the statute." *Prussner v. United States*, 896 F.2d 218, 224 (7th Cir. 1990) (en banc) (emphasis added). To that end, before the doctrine of substantial compliance could apply, there would have to be "a showing that the [regulatory] requirement is either unimportant or unclearly or confusingly stated." *Id.* at 224-25. And drawing on *Prussner*, the Fifth Circuit has articulated a similar formulation, holding that "substantial compliance is achieved where the regulatory requirement at issue is unclear and a reasonable taxpayer acting in good faith and exercising due diligence nevertheless fails to meet it." *McAlpine v. Commissioner*, 968 F.2d 459, 462 (5th Cir. 1992).

All of these formulations seek to preserve the need to comply strictly with regulatory requirements that are important to the tax collection scheme and to forgive noncompliance for either unimportant and tangential requirements or requirements that are so confusingly

written that a good faith effort at compliance should be accepted. Stated otherwise, a taxpayer may be relieved of perfect compliance with a regulatory requirement when the taxpayer has made a good faith effort at compliance or has a "good excuse" for noncompliance, and (1) the regulatory requirement is not essential to the tax collection scheme but rather is an unimportant or "relatively ancillary requirement" or (2) the regulatory provision is so confusingly written that it is reasonably subject to conflicting interpretations.

When we apply such a formulation to this case, we readily conclude that Volvo cannot have the benefit of substantial compliance in the circumstances presented. Regulation § 145.4052-1 was clear and unambiguous in requiring that Volvo and its dealers register with the IRS in accordance with § 4222 and that Volvo produce exemption certificates from its dealers with respect to trucks sold to the dealer for resale or for a long-term lease. Moreover, this provision was essential to the IRS's tax collection effort in that it demonstrated which party was responsible for the excise tax imposed by § 4051. The statute created a presumption that any sale, including the manufacturer's sale to the dealer was, a "first retail sale," and therefore the manufacturer owed the tax unless the dealer certified that it was purchasing the vehicle for resale. Thus, for example, if the dealer were purchasing trucks for its own use or for a business of daily rentals, the manufacturer would have to pay the excise tax itself. But if the dealer were purchasing trucks for resale or long-term leasing and so certified, the manufacturer would not have to pay the tax. Volvo's failure to provide the required demonstration that its dealers were purchasing trucks for resale thus left the tax regulation in its default application, requiring Volvo to pay the excise tax.

The requirements of Regulation § 145.4052-1 are not ancillary or unimportant; they go to the essence of who owes the tax and how the IRS can collect it. And the regulation itself established the importance of the documentation by requiring it as a condition precedent to the manufacturer's exemption, providing that "[t]he sale of an article is a taxable sale unless" the registration and certification requirements are met. Temp. Treas. Reg. § 145.4052-1(a)(2) (1988). In treating fulfillment of these requirements as a condition precedent to eligibility, the IRS had support in its authorizing statute. Section 4222, on which Congress directed the IRS to model its § 4052 regulations, treats reg-

istration as a condition precedent for a manufacturer taxpayer to avail itself of § 4221's exemption. *See* 26 U.S.C. § 4222(a) (providing that the exemption "shall not apply . . . unless the [parties] are all registered under this section"). Thus, by referring to § 4222, § 4052 directed the IRS to treat registration as a condition precedent for eligibility for the tax exemption in § 4051. The IRS was therefore within its authority to require registration as a condition precedent to eligibility for the manufacturer's exemption, rather than to treat it as an unimportant procedural matter. Accordingly, the doctrine of substantial compliance cannot be applied in this case because it would excuse noncompliance with essential regulatory requirements.

We should note that were we required to reach other aspects of the substantial compliance formulation, we would have to question whether Volvo's efforts to comply with Regulation § 145.4052-1 were in fact made in good faith. In its complaint and its brief on appeal, Volvo has claimed that it relied on IRS agents' misrepresentations regarding the requirements in Regulation § 145.4052-1 even though the regulation was clear and it understood its requirements. Thus, Volvo alleged in its complaint that it did not take "steps to obtain exemption certificates from its noncompliant dealers." Similarly in its brief on appeal, it stated, "Absent the IRS agents retreating from their statements, Volvo would have followed the registration requirements and obtained exemption certificates." In other words, Volvo has actually acknowledged that it *could have* complied with Regulation § 145.4052-1 but chose not to. Instead, it relied on individual IRS agents' assurances that it did not have to comply with the regulation. No formulation of the substantial compliance doctrine would award a tax refund to a taxpayer in these circumstances.

IV

Finally, Volvo contends that the district court erred in dismissing its claim for a refund based on its allegations that the IRS should be equitably estopped from enforcing Temporary Treasury Regulation § 145.4052-1 against Volvo because individual IRS agents told Volvo it did not have to comply with the requirements of the regulation.

In its complaint, Volvo alleged three instances when IRS agents misrepresented what was required to satisfy Regulation § 145.4052-1.

*First*, it alleged that during the first audit cycle, begun in 1991, an IRS agent told Volvo that it did not need exemption certificates, but that the IRS later changed its position. By this time, Volvo claimed, it could not have obtained the required documentation. *Second*, it alleged that also during the first audit cycle, the IRS's manager told Volvo that exemption certificates would apply retroactively to qualify as tax-exempt prior transactions between Volvo and the dealers. During the second audit cycle, however, another agent denied retroactive effect to the certificates. *Third* and finally, Volvo alleged that sometime after February 13, 1995, an appeals officer told Volvo that the IRS would accept affidavits in lieu of the specified certifications, but the IRS did not do so. Volvo claims that it suffered a detriment in receiving this misinformation because it "expended substantial resources in obtaining" affidavits.

Equitable estoppel against the government is strongly disfavored, if not outright disallowed, because it allows parties to collect public funds in a situation not expressly authorized by Congress. Courts should not "order[ ] recovery contrary to the terms of the regulation, for to do so would disregard 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" *OPM v. Richmond*, 496 U.S. 414, 420 (1990) (quoting *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)); *see also Miller v. United States*, 949 F.2d 708, 712 (4th Cir. 1991). If equitable estoppel ever applies to prevent the government from enforcing its duly enacted laws, it would only apply in extremely rare circumstances. In "leav-[ing] for another day whether an estoppel claim could ever succeed against the Government," the Supreme Court has ominously observed that "we have reversed every finding of estoppel that we have reviewed." *Richmond*, 496 U.S. at 422-23.

In this case, each of Volvo's allegations relates to an IRS agent's misrepresentation of the *requirements of law*, and it is well settled that reliance upon statements or actions *contrary to law* is not reasonable. *See Fredericks v. Commissioner*, 126 F.3d 433, 443 (3d Cir. 1997) ("[A] private party's reliance on governmental actions or omissions is not reasonable if such acts or omissions are contrary to the law"); *see also Miller*, 949 F.2d at 712; *Goldberg v. Weinberger*, 546 F.2d 477, 481 (2d Cir. 1976); *Posey v. United States*, 449 F.2d 228, 233-34 (5th Cir. 1997). Equitable estoppel requires reasonable reliance,

and we conclude that Volvo could not reasonably have relied upon individual IRS agent's representations that the unambiguous provisions of the law need not have been obeyed. Accordingly, we affirm the district court's dismissal of Volvo's claim based on equitable estoppel.

V

For the reasons given, we affirm the district court's summary judgment entered on Volvo's claims that Temporary Treasury Regulation § 145.4052-1 was arbitrary and capricious and that Volvo substantially complied with the regulation's requirements. We also affirm the district court's order dismissing Volvo's claim for equitable estoppel under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

*AFFIRMED*